IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VANCE NORTON, GARY JENSEN, KEITH CAMPBELL, ANTHONEY BYRON, BEVAN WATKINS, TROY SLAUGH, DAVE SWENSON, JEFF CHUGG, REX OLSEN, CRAIG YOUNG, and SEAN DAVIS,<br><br>        Plaintiffs,<br><br>v.<br><br>THE UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, a federally recognized Indian Tribe; the BUSINESS COMMITTEE FOR THE UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, in its official capacity; the UTE TRIBAL COURT OF THE UINTAH AND OURAY RESERVATION; the HONORABLE WILLIAM REYNOLDS, in his official capacity as Acting Chief Judge of the Ute Tribal Court; DEBRA JONES and ARDEN POST, individually and as the natural parents of Todd R. Murray; and DEBRA JONES as personal representative of the Estate of Todd R. Murray,<br><br>        Defendants. | **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>Case No. 2:15-cv-300-DB<br><br>District Judge Dee Benson |

Before the court are three motions: Defendants William Reynolds and Ute Tribal Court's

motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) (Dkt.

No. 23); Defendants Ute Indian Tribe and Business Committee's motion to dismiss under

Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) (Dkt. No. 27); and Plaintiffs'

motion for preliminary injunction (Dkt. No. 32.) The court held oral argument on the motions on

September 3, 2015. At the hearing, the Plaintiffs were represented by Jesse C. Trentadue and

Scott D. Cheney. Defendants were represented by Jeffrey S. Rasmussen, Frances C. Bassett, J. Preston Stieff, and Jeremy Patterson. Since then, the court has further considered the memoranda and other materials submitted by the parties, the oral arguments of counsel, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## FACTS

This action arises out of the death of Todd R. Murray, a Ute tribal member, on April 1, 2007. Mr. Murray was a passenger in a vehicle traveling westbound on Highway 40 in Uintah County. Utah State Trooper Dave Swenson observed the vehicle speeding and attempted to stop the vehicle. Mr. Kurip, the driver, failed to stop and Trooper Swenson pursued the vehicle in and out of the Ute tribe reservation's checkerboard plot boundaries. After approximately thirty minutes, the Kurip vehicle ran off the highway and Mr. Murray exited the vehicle and fled the scene. Thereafter, Mr. Murray encountered Vernal City Police Officer Vance Norton. Gun fire ensued, which resulted in Mr. Murray's death.

In 2009, Mr. Murray's parents and estate brought an action in Utah state court against all of the Plaintiffs in the instant action, among others, asserting federal and state civil rights and common law tort and wrongful death claims. That action was subsequently removed, without objection, to this court. On March 7, 2014, Judge Campbell of this court granted summary judgment in favor of all of the defendants on the civil rights claims, finding that there was no genuine issue of material fact to support any other conclusion than that Mr. Murray had committed suicide, and declined to exercise supplemental jurisdiction over the state common-law

claims. That ruling is currently on appeal to the United States Court of Appeals for the Tenth Circuit.

On March 5, 2015, the Ute Tribe and Mr. Murray's parents and estate brought an action in Ute Tribal court ("tribal court action") reasserting the dismissed common-law claims and again seeking damages for injuries allegedly arising out of Mr. Murray's death. Plaintiffs in this action are named as defendants in the tribal court action.

On April 28, 2015, Plaintiffs filed this action, seeking a declaratory judgment, pursuant to 28 U.S.C. §§2201 and 2202, that the Ute Indian Tribe and Ute Tribal Court lack jurisdiction over them and seeking to enjoin the tribal court action.

## DISCUSSION

*Tribal Court Jurisdiction*

The United States Supreme Court has long held that "the inherent sovereign powers of an Indian tribe do not extend to the activities of non-members of the tribe." *Montana v. United States* 450 U.S. 544, 565 (1981). The Court has explained that "by virtue of their incorporation into the American republic," tribes "lost the right of governing persons within their limits except themselves." *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 328 (2008). However, tribes maintain the authority to "regulate…the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. A tribe "may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id*. at 566.

Here, the general rule set forth by the United States Supreme Court in *Montana* applies, and neither of the exceptions is applicable. Plaintiffs did not enter any consensual relationship with either the tribe or its members such that tribal authority would be implicated. Furthermore, the officers, in pursuing their official duties onto reservation land did not threaten or have a direct effect on the political integrity, the economic security, or the health or welfare of the Ute Tribe.

The United States Supreme Court case *Nevada v. Hicks*, 533 U.S. 353 (2001), is particularly instructive with respect to the application of the *Montana* rule and exceptions to the instant case. In *Hicks*, state officers entered reservation land to execute search warrants to search Hicks's home for evidence of an off-reservation crime. *Id.* at 353. Hicks then filed suit in Tribal Court against the officers and the state of Nevada, alleging trespass, abuse of process, and violation of constitutional rights pursuant to 42 U.S.C. § 1983. *Id.* The United States Supreme Court held that the Tribal Court did not have jurisdiction to hear the case and that the officers were not required to exhaust their claims in Tribal Court before bringing them in the Federal District Court. The Court noted that "[t]ribal courts are not courts of 'general jurisdiction'" and, as such, "their inherent adjudicative jurisdiction over nonmembers is at most only as broad as their legislative jurisdiction" or the tribe's regulatory authority. *Id.* at 353-54. The Court further held that the rule set forth in *Montana*—that "the exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations…cannot survive without express congressional delegation"—"applies to both Indian and non-Indian land." *Id.* at 353 (citing *Montana*, 450 U.S. at 544, 564). The Court also held that "Congress has not stripped

the States of their inherent jurisdiction on reservations with regard to off-reservation violations of state law." *Id*.

The facts that led the Court in *Hicks* to determine that tribal jurisdiction was not appropriate are remarkably similar to the facts at issue here. As in *Hicks*, none of the officers here are tribal members. They entered reservation land pursuant to their official duties and in pursuit of a crime committed, at least in part, off-reservation. They are accused of the improper performance of their official duties, as were the officers in *Hicks*. Also, the State's interest here in pursuing a vehicle fleeing at high speeds is considerable, as was the State's interest in executing process in *Hicks*, and that interest "is not diminished because this suit is against officials in their individual capacities." *Id.* at 354. Thus, in accordance with the ruling in *Hicks*, the Tribal Court here does not have jurisdiction over Plaintiffs in the tribal court action.

*Exhaustion of Tribal Remedies*

Defendants also argue that Plaintiffs must submit to tribal court litigation in order to exhaust tribal court remedies. Only then, Defendants argue, can this court assert its jurisdiction to review the first assessment of its own jurisdiction. In *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, the United States Supreme Court held that, although "a federal court may determine under §1331 whether a tribal court has exceeded the lawful limits of its jurisdiction[,]" the "examination should be conducted in the first instance in the Tribal Court itself." 471 U.S. 845, 853, 856 (1985). However, the exhaustion policy set forth in *National Farmers Union* is subject to several exceptions. *Burrell v. Armijo*, 456 F.3d 1159 (10th Cir. 2006) (restating and applying the exceptions to tribal exhaustion). In *Burrell*, the Tenth Circuit held that the

"exhaustion policy provides a tribal court the first opportunity to examine its own jurisdiction, but is subject to the following exceptions:

> (1) "where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith;'" (2) "where the [tribal court] action is patently violative of express jurisdictional prohibitions;" (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction;" (4) "[w]hen …it is plain that no federal grant provides for tribal governance of nonmember conduct on land covered by [the *Montana* rule];" or (5) it is otherwise clear that the tribal court lacks jurisdiction so that the exhaustion requirement "'would serve no purpose other than delay.'"

456 F.3d at 1168 (internal citations omitted).

Several of the exceptions to the exhaustion requirement apply here. As discussed above and in accordance with *Hicks*, it is plain that no federal grant provides for tribal governance of the nonmember conduct here pursuant to *Montana*. As explained above, it is also otherwise clear that the tribal court lacks jurisdiction. Thus, "[b]ecause the rule that tribal courts lack jurisdiction over state officials for causes of action relating to their performance of official duties is clear, adherence to the tribal exhaustion requirement would serve no purpose other than delay and is therefore unnecessary." *Hicks*, 533 U.S. at 354. That is particularly true here, where the case was originally brought by the Murray family in Utah state court, which, after being removed to federal court, was extensively litigated to a summary judgment resolution. In fact, the Plaintiffs (Defendants here) in their original complaint acknowledged that the Utah Eighth District court had "exclusive original jurisdiction" to resolve the claims alleged. Accordingly, the Plaintiffs here are not required to exhaust tribal remedies prior to bringing this action.

*Insufficient Service of Process*

In their motion to dismiss, Defendants Ute Indian Tribe and Business Committee of the Ute Indian Tribe also argue that there has been no valid service of process on the Tribe or its

Business Committee. Defendants argue that Federal Rule of Civil Procedure 4 does not include a section on Indian Tribes and, as such, Plaintiffs must effectuate service on the Tribe and its Business Committee in accordance with the Tribe's law, which requires that service be made "by a person who has lawful authority." The court rejects this argument. Proceedings in this court, to which the Ute Indian Tribe and Business Committee are subject, are governed by the Federal Rules of Civil Procedure. The Ute Indian Tribe and Business Committee were served in accordance with those rules. Defendants were properly served with process.

*Sovereign Immunity*

Defendant Reynolds and the Ute Tribal Court also argue that tribal sovereign immunity applies to bar suit against them. Here, Plaintiffs seek only declaratory and prospective injunctive relief with respect to the scope of the Defendants' adjudicative authority. The Tenth Circuit has held that "the alleged unlawful exercise of tribal court jurisdiction in violation of federal common law is…sufficient to sustain the application of the *Ex Parte Young* doctrine…and therefore is not barred by the doctrine of sovereign immunity." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011). This suit is not barred against Defendant Reynolds or the Ute Tribal Court by the doctrine of sovereign immunity.

*Defendants' Arguments to Dismiss Plaintiffs' Second Claim for Relief*

Plaintiffs' second claim for relief is an alternative claim requesting a declaratory judgment that Plaintiffs are entitled to the due process and other rights that would be accorded to them under the United States Constitution if they are found to be subject to suit in the tribal court action. Given the court's ruling that the tribal court does not have jurisdiction over the Plaintiffs, Defendants' second claim for relief is moot

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss are hereby DENIED and

Plaintiffs' motion for a preliminary injunction is hereby GRANTED.

DATED this 2nd day of October, 2015.


BY THE COURT:

Dee Benson
United States District Judge